IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                             CIV 99-1135 JP/KBM
                                               CR 95-229 JP

ANTHONY GAULT f/k/a
ARTHUR HUGHES,

      Defendant-Movant


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Anthony Gault's[1] Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 *(Doc. 108)*[2] and the United States' Answer to 28 U.S.C. § 2255 Motion and Motion To Dismiss *(Doc 113)*. Defendant raises eighteen claims. Having carefully reviewed the entire file (including *Doc. 8,* which Respondent suggested should be stricken), I find that the issues can be resolved on the record and, therefore, an evidentiary hearing is not required. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999); *cert. denied,* 121 S. Ct. 93 (2000)*; United States v. Marr,* 856 F.2d 1471, 1472 (10th Cir. 1988), Rule 8(a), *Rules Governing Habeas Corpus Under Section 2255.* Based on my review, I recommend that the United States' motion be granted and that this action be dismissed.

---

[1] Because of the initial confusion about Defendant's true name, throughout this recommendation, I will refer to him as "Defendant."

[2] Unless otherwise noted, all citations to documents are those contained in the criminal record, CR 95-229 JP.

## I.  Procedural Background

Defendant was arrested after the nylon bag he was traveling with was found to contain

Phencyclidine ("PCP").  The Indictment (*Doc. 8*) provided that:

> On or about the 3rd day of April 1995 . . . defendant,
> ANTHONY GAULT, unlawfully, knowingly and intentionally did
> possess with intent to distribute one kilogram and more of a
> mixture and substance containing a detectable amount of [PCP], a
> Schedule II controlled substance.
> In violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C.
> § 841(b)(1)(A) and 18 U.S.C. § 2.

Defendant was represented by the Federal Public Defender on trial and direct appeal.  Before trial,

Chief District Judge James A. Parker granted Defendant's motion to suppress, but the Tenth

Circuit reversed.  *See United States v. Gault,* 92 F.3d 990 (10th Cir.), *cert. denied,* 519 U.S. 939

(1996).  Judge Parker then denied Defendant's motion challenging the method of selecting jury

venires in Albuquerque and Santa Fe.  *United States v. Gault,* 973 F. Supp. 1309 (D.N.M. 1997).

The matter proceeded to trial and the jury found Defendant guilty "as charged in the

Indictment."  *Doc. 88.*  With a total offense level of 36 and a criminal history category of II, the

applicable Guidelines range was 210 to 262 months imprisonment followed by a five-year term of

supervised release.  Judge Parker sentenced him to the low end of the range – 210 months

imprisonment and five years supervised release.  *Doc. 100.*

Counsel raised three issues on direct appeal:  (1) the constitutionality of jury venire

selection; (2) a Sixth Amendment claim regarding cross-examination of a chemist about a former

colleague's falsified reports; and (3) failure to grant a downward adjustment as a minimal or

minor participant.  In a reported opinion entered April 16, 1998, the Tenth Circuit  rejected each

of the claims on the merits.  *See Doc. 107; United States v. Gault,* 141 F.3d 1399 (10th Cir.

1998).  The Supreme Court of the United States denied certiorari on October 5, 1998.  *See Gault v. United States,* 525 U.S. 910 (1998).  Proceeding *pro se,* Defendant filed the instant action on October 4, 1999 within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"].  *See e.g., United States v. Burch,* 202 F.3d 1274, 1276, 1279 (10th Cir. 2000).

In seven separately numbered sections Defendant raises a total of eighteen claims covering alleged prosecutorial misconduct, ineffective assistance of counsel ("IAOC"), and trial and sentencing error.  For ease of analysis I have reorganized the claims and do not refer to them by Defendant's claim numbers.[3]  The United States argues that each of the claims is procedurally defaulted for failure to raise them on direct appeal and, alternatively, that all of the claims are without merit.  *Doc. 113.*

---

[3]  Defendant organized his claims in *Doc. 108* as follows:

Claim 1:  IAOC for [1] failure to request lesser included offense instruction of simple possession (an identical claim also was set forth in Claim 5).
Claim 2:  Error by trial court [2] for failure to give instruction on aiding and abetting, and [3] allowing prejudicial prosecutorial remarks in closing arguments
Claim 3:  IAOC for failure to [4] to move for determination of mental competency to stand trial, [5] request an instruction about competency, and [6] request entrapment instruction
Claim 4:  Prosecutorial misconduct in mischaracterizing evidence regarding [7] Dolan's beliefs, [8] Defendant's clothes, [9] Small smelling ether, and [10] Defendant's identification of himself as Arthur or Anthony; [11] IAOC for failing to rebut the government's assertions during opening or closing arguments and witness testimony; and [12] insufficient curative instructions
Claim 5:  IAOC for failure to [13] raise insufficiency of evidence on appeal, [14] object to lack of aiding and abetting instruction, and [15] raise instructions issues on appeal
Claim 6:  Sentencing error regarding [16] the quantity of drugs
Claim 7:  Sentencing errors regarding [17] consideration of prior possession of narcotics charge and [18] consideration of prior burglary charge.

## II.  Evidence At Trial

The nylon bag Defendant was carrying for his train trip from California to New York was seized during a scheduled stop in Albuquerque.  Defendant was not on the train when DEA Agent Small was looking for suspicious luggage in the coach section.  Defendant's bag caught the agent's attention because it was sticking out into the aisle, was new, and still had the price tag on it.  Agent Small kicked the bag to see how heavy it was and because it did not move easily, lifted it off the floor.  Finding that the bag was heavy, Agent Small then sniffed the bag and smelled ether, a substance used to make PCP.

After Defendant reboarded and resumed his seat, Agent Small and his partner approached him and questioned him.  Among other things, Defendant had presented no identification and gave the name that was on his train ticket (Anthony Gault).  The ticket was one-way and was bought with cash the day of the departure.  Defendant told Agent Small the bag was his and that it contained brandy.  Defendant did not consent to a search of the bag, but did let Agent Small sniff it again.  Agent Small detained the bag to attempt to obtain a warrant to search it, and he told Defendant that if it did not contain contraband, he would mail it to the New York address Defendant had given him.  During this encounter, Defendant was wearing a blue sweater and khaki-colored pants.

As Defendant continued his journey, Agent Small obtained a search warrant.  The bag contained a sealed Jack Daniels whiskey box surrounded by foam rubber packing material.  Inside the cardboard box were six Jack Daniels whiskey cartons, each containing a half-gallon bottle surrounded packed in cedar balls and sawdust.  The substance in the bottles field-tested positive for PCP.  The only personal item in the bag was a toothbrush.  An arrest warrant issued for

Defendant.

When the train reached the station in Las Vegas, New Mexico, an attendant informed the arresting officers that Defendant was in the lounge. At this point Defendant was wearing black pants and denied that he was Anthony Gault. He was placed under arrest. During a pat down the officers discovered that Defendant was wearing the black pants over a pair of khaki-colored pants.

At trial, Defendant testified that he had been an alcoholic for 25 years, drinking "at least a half a gallon of strong liquor every day," and he was on drunk the day he was arrested. He said he was traveling with alcohol because he was going to visit family members, who were also alcoholics. He claimed his cleaning lady had purchased the brandy for him and packed his bag, and that he did not realize he was carrying drugs. Defendant contended that during the trip he drank the alcoholic beverages sold on the train rather than his brandy because other passengers told him that if the conductor saw the brandy, it would be confiscated.

Defendant also explained that originally he intended to travel with an individual named Anthony Gault, a "helper" with Defendant's auto mechanic business. According to Defendant, although Gault made the travel arrangements, Defendant purchased only one ticket on the eve of his trip because he did not have enough money for the both of them to travel. According to Defendant, this was why his ticket showed the name Anthony Gault instead of Defendant's asserted true name "Arthur Hughes."

### III.  Procedural Default & Ineffective Assistance Of Counsel As Alleged Cause

It is well-settled that § 2255 proceedings are not a substitute for direct appeal and that failure to raise an issue on direct appeal will constitute a procedural default of that issue unless

Defendant establishes either "cause and prejudice" or a "fundamental miscarriage of justice." *E.g., United States v. Frady,* 456 U.S. 152, 165-168 (1982); *United States v. Allen,* 16 F.3d 377, 378 (10th Cir. 1994). In response to the United States' assertion of procedural default, Defendant argues that the "cause" for not bringing the claims on direct appeal was trial counsel's ineffectiveness. Defendant asserts that both at trial and on appeal, counsel focused on the venire issue to the exclusion of other allegedly meritorious issues. *Doc. 115.*[4]

If the alleged ineffectiveness rises to the level of constitutionally ineffective assistance of counsel under the *Strickland v. Washington,* 466 U.S. 668 (1984), the procedural default will be excused. *See e.g., Edwards v. Carpenter,* 120 S. Ct. 1587, 1591 (2000); *Rogers v. United States,* 91 F.3d 1388, 1391 (10th Cir. 1996), *cert. denied,* 519 U.S. 1134 (1997). Thus, the practical effect of raising ineffectiveness as "cause" for a procedural default is that the merits of the claim are reviewed. *See United States v. Galloway,* 56 F.3d 1239, 1241-1242 (10th Cir. 1995). Furthermore, Defendant raises a substantive claim as to his mental competency which is generally not subject to a procedural bar. *E.g., Walker v. Attorney General,* 167 F.3d 1339, 1344 (10th Cir.), *cert. denied,* 120 S. Ct. 449 (1999). Accordingly, below I analyze Defendant's claims on the merits to determine whether counsel was ineffective.

---

[4] Defendant does not argue that the default should be excused under the fundamental miscarriage exception. Defendant continues to assert, as he did at trial, that he is innocent because he did not know what he was carrying. The "fundamental miscarriage of justice" exception applies where Defendant makes a "colorable showing of factual innocence." He has not done so here. Because I find no constitutional violations, Defendant's claim of innocence, standing alone, does not excuse the procedural default or provide an independent basis for habeas relief. *See Herrera v. Collins,* 506 U.S. 390, 404-405 (1993); *Parks v. Reynolds,* 958 F.2d 989, 995 (10th Cir.), *cert. denied,* 503 U.S. 928 (1992).

6

## IV. *Strickland* **Standard**

Under the two-prong test announced in *Strickland,* Defendant must first show that counsel's representation was "objectively unreasonable."  To do so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable professional assistance."  *E.g., Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 100 (2000).  To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong."  *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 2206 (2000).  Defendant must also establish "prejudice."  That is, that absent counsel's errors there is a "reasonable probability" that the outcome of the trial would have been different.  *Id.*  "Reasonable probability" means that confidence in the outcome is undermined.  *Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 1438 (2000).  An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met.  It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course.  *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 377 (1999).[5]

---

[5] Defendant's claims tend to be conclusory – he simply asserts error or ineffectiveness without discussion of any facts underlying his claims.  Generally, mere conclusory allegations are not sufficient to support habeas relief.  *E.g., United States v. Cox,* 83 F.3d 336, 341 (10th Cir. 1996).  However, Defendant also does indicate that he is relying on the "court record" and the materials attached to his § 2255 motion, and does cite to specific portions of the transcript, all of which I have reviewed in analyzing his claims.  *See Doc. 180 at 16; Doc. 115 at 8;* Rules 4-7, *Rules Governing Habeas Corpus Under Section 2255.*

Moreover, the case cited by Defendant, *Stouffer v. Reynolds,* 168 F.3d 1155 (10th Cir. 1999), requiring an evidentiary hearing is distinguishable.  In *Stouffer*, the defendant received a death sentence.  The Tenth Circuit vacated the district court's order denying habeas relief and remanded with instructions to hold an evidentiary hearing.  In doing so, it noted that the record

## V.  Failure To Request Mental Competency Hearing

Defendant contends that he "was unable to understand the nature of and the consequences of the proceedings against him and to properly assist his attorney in his defense" and asserts that his attorney was ineffective in "failing to move for a determination of [his] mental competency to stand trial." *Doc. 108 at 5.*  He is thus raising a "substantive" competency claim.  *See Walker,* 167 F.3d at 1344.

To succeed on this claim, Defendant "must present evidence that creates a real, substantial and legitimate doubt as to his competency to stand trial."  *Id.* (internal quotations omitted). Defendant fails to sustain his burden.  Nowhere does he discuss the nature of his alleged incompetency at the time of his trial.  Because he points to no specific evidence "counsel could have obtained and presented" as to mental competency issue,  Defendant has "failed to establish the requisite prejudice stemming from any deficiency in counsel's performance."  *McGregor v. Gibson,* 219 F.3d 1245, 1253 (10th Cir. 2000).  This failure alone is grounds to reject this ineffective assistance of counsel claim.

In addition, however, the claim has no support in the record.  To the extent that Defendant is alluding to his alcoholism as the basis for incompetency to stand trial, I note that his drinking was presumably discontinued prior to trial as Defendant was detained for almost two years – from the time of his arrest (April 1995) to his trial (March 1997).[6]  Furthermore, there is nothing in the

_____

was replete with instances of deficient performance by counsel, the cumulative effect of which might constitute ineffective assistance.  Absent an evidentiary hearing, however, the record was inadequate for the panel to make findings as to objective reasonableness and prejudice.  *Id. at 1165, 1168.*  Such a situation is not present in the case at bar.

[6]  At a hearing concerning whether Defendant should be released to a halfway house so he could work, counsel indicated that Defendant "did have an alcohol problem.  I believe by being

record illustrating unusual or irrational behavior during trial.  To the contrary, the transcript

reveals that Defendant's testimony was lucid and responsive to the questions asked.  *See Wallace*

*v. Ward,* 191 F.3d 1235, 1243-44 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 2222 (2000); *Bryson*

*v. Ward,* 187 F.3d 1193, 1203-1204 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 1566 (2000).  Thus,

Defendant utterly fails to show that a "competency to stand trial" defense could have prevailed at

trial, which is fatal to his ineffectiveness claim.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985);

*United States v. Gray,* 182 F.3d 762, 767 (10th Cir. 1999).

## VI.  Failure To Request Instruction On Entrapment, Simple Possession, "Competency" And Failure To Object To Lack of Instruction on Aiding And Abetting

Defendant argues that counsel was ineffective in failing to request jury instructions on

entrapment, simple possession, and "competency" as well as in failing to object when the trial

judge failed to charge the jury on the elements of an aiding and abetting theory of liability.  A

"defendant is entitled to an instruction on his theory of the case if the instruction is a correct

statement of the law and if he has offered sufficient evidence for the jury to find in his favor."

*United States v. McIntosh,* 124 F.3d 1330, 1337 (10th Cir. 1997).  Each of these claims is without

merit for two reasons.  First, the evidence did not support giving any of these instructions.

---

incarcerated for one year and 14 days he has essentially been cured of any possible alcohol problem."  *Motion Transcript 4/18/96 at 8-9.*  In response to the Court's concern that Defendant had not appeared three time for court hearings in other criminal proceedings, counsel attributed those failures to alcoholism, which in turn caused Defendant to "misunderstand" the "court system."  *Id. at 13-14.*  Counsel indicated that Defendant "doesn't completely understand the court system even today, although he does understand, since I have been representing him for over a year, he has a lot greater understanding of how the system works."  *Id. at 13.*  It appears that for a few months in 1996, Defendant may indeed have been released to the La Posada halfway house.  *See Docs. 5 (originally granting motion to detain), 43, 44 (stay of order to release Defendant to halfway house pending appeal with testing conditions), 47 (Tenth Circuit vacating order to release Defendant to halfway house).*  Even so, that placement would have subjected Defendant to regular alcohol and drug testing.

Second, pursuing these theories would have been inconsistent with Defendant's assertion of innocence.

### A.   *The evidence failed to support the giving of the instructions*

*Entrapment Instruction.*   To be entitled to pursue an entrapment instruction, "defendant must point to evidence of both lack of predisposition and government inducement."   *United States v. Ortiz,* 804 F.2d 1161, 1165 (10th Cir. 1986).  Indeed, the defense is viable

> only if [defendant] can identify evidence from which a reasonable juror could derive a reasonable doubt as to the origin of criminal intent. . . .  [The] defendant must point to evidence that is more than flimsy or insubstantial. . . .  [C]onclusory and self-serving statements, standing alone, will not suffice.

*Id.* at 1165-1166 (internal quotations and citations omitted); *see also e.g., United States v. Duran,* 133 F.3d 1324, 1330 (10th Cir. 1998).  Here, there was no evidence whatsoever that governmental officials were involved in inducing the commission of the crime.  They merely discovered it.  Moreover, nothing in the conduct of the officials could be characterized as "outrageous."  *E.g., United States v. Diaz,* 198 F.3d 1239, 1245 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 1448 (2000).

*Simple Possession Instruction.*   There was no dispute that the amount of PCP in question was enormous – 1,304 grams or 260,800 dosage units.  *Trial Transcript at 28-29, 153.*  Simply put, "significant amounts [of drugs] do not support an instruction for simple possession."  *United States v. Lacey,* 86 F.3d 956, 970 (10th Cir.), *cert. denied,* 519 U.S. 944 (1996).

*"Competency" Instruction.*   As discussed above, there was no basis for pursuing a competency to stand trial issue.  In any event, that issue would have been for the judge, not the jury.  To the extent Defendant is arguing that counsel should have requested a diminished capacity

instruction based on his history of alcoholism, he would not have been entitled to that instruction either.  There is no evidence suggesting that Defendant's "mental capacity was so impaired by his voluntary ingestion of [alcohol] that he was unable to form the specific intent necessary to commit the crime" of possessing PCP with the intent to distribute it.  *See United States v. Jackson,* 213 F.3d 1269, 1294 (10th Cir. 2000), *cert. denied,* 2000 WL 1336511 (12/4/00) (as to Dwight Jackson) *& granted and remanded,* 2000 WL 1200066 (12/4/00) (for further consideration in light of *Apprendi* as to Iris Jackson).  None of the officers testified that Defendant was impaired, and the evidence shows that while Defendant may have been drinking on the train, his responses to the officers were coherent and appropriate to the questions and situation.  Evidence of mere "status as [an alcoholic] is not sufficient to put his mental capacity at issue."  *Id.*

   *Aiding & Abetting Instruction.*  The jurors were instructed on possession with intent to distribute under 21 U.S.C. § 841(a)(1) and were not instructed on an aiding and abetting theory. *Trial Transcript at 158-159; see Jackson,* 213 F.3d at 1292 (outlining elements of aiding and abetting).  Chief Judge Parker correctly noted during sentencing that there had been no evidence upon which to find that Defendant was one among others involved in a criminal venture. *Sentencing Transcript 6/23/97, at 10-11.*[7]  Therefore, counsel could not have been ineffective in failing to object to the lack of the aiding and abetting instruction.

---

   [7]  The recitation of the aiding and abetting charge in the Pre-sentence Report, which Defendant attached to his 2255 motion, in no way prejudices Defendant.  Even if he had been convicted of aiding and abetting, the Guideline calculations are based on the underlying offense – possession with intent to distribute – not an aiding and abetting count.  *See Sentencing Guidelines, § 2X2.1.*  [Note:  The 1995 version of the Guidelines was used according to the pre-sentence report exhibit attached to Defendant's § 2255 motion.  The relevant portions of the Guidelines cited throughout this opinion have not changed, so I simply refer to them by their section number.]

### B.  Such jury instructions were inconsistent with the "innocence" defense

Even if the evidence could have supported the instructions, it would not have been unreasonable for counsel to forego requesting them because all of the instructions would have been inconsistent with Defendant's assertion of innocence.  Throughout the proceedings, and indeed through sentencing, Defendant maintained his innocence.  He has maintained that his cleaning lady bought and packed the brandy, he never looked into the box she packed, and he did not know there was PCP in the bottles.  *See Trial Transcript at 128-130, 135; Sentencing Transcript 5/30/97 at 10; Sentencing Transcript (6/23/97) at 4-5, 18.*

Either an entrapment defense or an instruction on aiding and abetting is tantamount to a concession that a crime was committed by the defendant.  Thus, pursuing such defenses would have undermined Defendant's credibility in his assertion of innocence.  Likewise, "a request for instructions on a lesser included offense of simple possession . . . would have been irrational . . . because the instructions would have been inconsistent with the defendant's defense."  *United States v. Mock,* 1999 WL 125829 at *5 (D. Kan. 1999) (factually very similar to the present case) (unpublished); *see also e.g., United States v. Smith,* 10 F.3d 724, 729 (10th Cir. 1993) ("an attorney could reasonably choose to avoid confusing the jury with alternative defenses and try the case solely upon [one theory]").

The same is true of a diminished capacity defense:

> Pursuing a diminished capacity defense would have been inconsistent with [Defendant's] complete denial of involvement in the [crime].  Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance. . . . Similarly, counsel's failure to seek an intoxication instruction was reasonable, because the instruction would have conflicted with his chosen trial strategy.

12

*Jackson v. Shanks,* 143 F.3d 1313, 1320 (10th Cir.) (citations omitted), *cert. denied,* 525 U.S. 950 (1998).  Accordingly, any decision on the part of defense counsel to forego requesting instructions on alternative defense theories or object to the lack of an aiding and abetting instruction was objectively reasonable under the circumstances.

### VII.  Prosecutorial Misconduct

Defendant argues that the prosecutor mischaracterized the record, counsel was ineffective in responding to them and the Court's curative instructions were insufficient.  Since none of the four grounds of alleged prosecutorial misconduct involve a specific constitutional right, his claims are analyzed under the standard for due process violations set forth in *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974).  That is, a prosecutor's conduct, if improper, violates due process only where the actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* at 643; *see also e.g., Hoxsie v. Kerby,* 108 F.3d 1239, 1243, 1244 (10th Cir.), *cert. denied,* 522 U.S. 844 (1997).

As detailed below, I find that it is Defendant who mischaracterizes the record and that the prosecutor's comments were not improper, which by itself is sufficient for denying relief.  I further find that none of grounds cited by Defendant introduced any "unfairness" in the proceedings whatsoever, particularly in light of Judge Parker's proper and sufficient instruction prior to trial that opening and closing statements "are not evidence" and explanation of the purpose of them.  *Trial Transcript at 8-9.*

*Dolan's Beliefs & Testimony Regarding Clothing.*   Defendant asserts that in his opening statement, the prosecutor mentioned "beliefs" by the arresting officer that "were never submitted as evidence."  In an almost incomprehensible argument, Defendant seems to contend that the

following testimony by Officer Dolan cannot constitute "evidence" that the officer "believed" that

Defendant matched the description of the person for whom the arrest warrant had been issued.

*See Doc. 108 at 5-6; Trial Transcript at 16.*   Officer Dolan testified that the officers who seized

the nylon bag gave him this description of Defendant:

> a black male, five six to five eight, very thin build . . . [no] front
> teeth.  He was supposed to have been wearing a blue sweater,
> pullover, and khaki colored pants.  The description went on to say
> that he would be in Coach 413 and he would be seated in either
> Seat Number 29 or 30.

*Trial Transcript at 110.*  He further testified that an attendant told him that the man in Seat 29

had gone to the lounge and pointed out Defendant to him.  Officer Dolan asked Defendant if he

was "Anthony Gault" and Defendant denied it.  Officer Dolan asked Defendant to stand up, and

Officer Dolan observed that the physical description "matched [Defendant] perfectly except that

he had on back pants instead of khaki colored pants."  *Id. at 111.*

Officer Dolan was not required to use the magical word "belief" for his observations to

support that inference.  Similarly, mere reference by the prosecutor in his opening to Defendant's

clothing at the time of arrest did not mandate that the actual clothes be introduced into evidence

given Officer Dolan's descriptive testimony of them.

*The Odor of Ether.*  In the opening statement, the prosecutor mentioned that Agent Small

had detected the odor of ether.  In a totally frivolous argument, Defendant contends that because

the agent "is not a dog and did not have a K-9 from the DEA to assist [him]," Agent Small

"therefore lacked probable cause."  *See Doc. 108 at 6.*   Non-membership in the *Canidae* family

does not automatically serve to disqualify one from having a sufficiently developed sense of smell

to detect ether, however.  Agent Small testified to his credentials, experience with interdiction,

14

and his specific prior experience on numerous occasions with seizing PCP and its associated ether smell.  *See Trial Transcript at 75, 90-91.*

*The "Name" Incident.*   In the opening statement, counsel for the government stated that at the time Agent Small questioned the Defendant about the contents of his nylon bag, "Defendant identified himself as Arthur Gault -- excuse me, Anthony Gault."  *Trial Transcript at 15.*  On the other hand, Defendant testified at trial that Agent Small took the name "Gault" off of the train ticket and never specifically asked Defendant his name during that initial encounter.  *Trial Transcript at 136.*  On redirect examination, Agent Small testified that Defendant "gave" him the name Anthony Gault on that day.  *See Trial Transcript at 105.*  In essence, Defendant argues that there was insufficient evidence before the jury to justify comment by the prosecutor on the issue.

Agent Small had tape recorded the questioning, however, and the tape was played for the jury.  *Id. at 80.*  Although a transcription of the tape was not provided to the jury, *see Doc. 65,* it is undisputed that both of the tendered transcriptions of the tape show that Agent Small asked Defendant if his last name was spelled "G-A-U-L-T" and that Defendant replied affirmatively, *see Doc. 62, Exh. 1 at 6 (Defendant responds "yeah"), Exh. 2 at 7 (Defendant responds "yes").*

Furthermore, at trial the prosecutor asked Defendant if he remembered Agent Small inquiring, "'Your last name is Gault, G-a-u-l-t?'  It is on the tape; do you remember that?"  Defendant replied:  "I am not sure.  **I must have said yes,** I don't know." *Trial Transcript at 137 (emphasis added).*  Defendant now contends that the recording was "distorted and inaudible," and argues that the prosecutor did not refer to the "name" incident in his closing argument because such evidence was supposedly insufficient to justify comment.  In short, I find such arguments without merit.

15

It appears that Defendant also argues ineffectiveness of his attorney because he chose not to raise the name incident while questioning witnesses or directly raising the issue in the defense closing argument. Yet, counsel's tactical reason for avoiding the issue is evident. There is no evidence that Defendant ever made an effort to correct Agent Small's impression that Defendant's name was Anthony Gault. To voluntarily elicit and highlight for the jury Defendant's position that he did not offer his true name and did not correct Agent Small's misimpression on that point, could have been indicative of guilty knowledge and thus damaging to the defense theory of innocence.[8]

## VIII. Failure To Raise Issues On Appeal

Defendant argues that counsel did not raise issues concerning instructions or lack thereof on appeal and that, although counsel moved for a directed verdict, he did not raise the issue of sufficiency of the evidence on appeal. This Court's review of an attorney's decision to omit an issue on appeal is highly deferential – it is only possible for counsel's performance to rise to the level of ineffectiveness when counsel fails to argue a "dead-bang winner" – an obvious issue that would have resulted in reversal on appeal. *E.g., Moore,* 195 F.3d at 1180. For the reasons set

---

[8] In fact, counsel did indirectly address the issue in his closing both subtly and skillfully. Counsel argued that Defendant's history of alcoholism and consumption of alcohol on the day in question explained the odd circumstances surrounding Defendant's trip and argued that Defendant was duped by others into unwittingly transporting the drugs. *See Trial Transcript at 176-196.* Counsel also made the following points, among others: Defendant is an alcoholic from a family of alcoholics; alcoholics focus on drinking; Defendant thought he was carrying brandy and had not opened the box packed for him by his cleaning lady; Defendant had been told his liquor would be confiscated if discovered and was drinking the beer available on the train but was concerned about its high price; and a drug dealer carrying millions of dollars worth of drugs would neither leave the drugs unattended as Defendant did when he debarked in Albuquerque to look for food and cheap liquor nor forego his two opportunities to get off of the train after his bag was seized and before he was arrested.

forth above, such contentions were sure-fire losers on appeal and far from rising to the level of "dead-bang winners."

As for sufficiency of the evidence, under the test set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), I cannot weight conflicting evidence or make credibility determinations and must presume that the jury resolved conflicting evidence in favor of the prosecution.  I find that the circumstantial evidence submitted by the United States in this case was sufficient for "***any*** rational trier of fact [to] have found the essential elements of the crime beyond a  reasonable doubt."  *Id.* at  319 (emphasis original); *see also United States v. Dashney,* 117 F.3d 1197, 1202 (10th Cir. 1997).  Based on the prosecution's case as discussed in the previous sections above, I find that the evidence was sufficient to support the jury's verdict and, therefore, counsel was not ineffective for failing to raise the issue on appeal.  *See United States v. Hooks,* 780 F.2d 1526, 1532 (10th Cir.), *cert. denied,* 475 U.S. 1128 (1986).  Moreover, as to intent element, the presence of a large amount of drugs "is, in and of itself, enough to convict on the offense of possession with intent to distribute."  *Fitzgerald v. United States,* 719 F.2d 1069, 1070 (10th Cir. 1983).

## IX.  Sentencing Issues

Defendant raises three claims of alleged sentencing errors by the trial court, each of which is without merit.

*Background Regarding Prior Possession of Narcotics Charge.*  In order to understand this claim, it is necessary to recount what occurred during sentencing.  Prior to trial, the United States filed enhancement informations based on Defendant's 1990 state conviction for possession of narcotics.  *See Docs. 59, 80.*  Based on that conviction, under 21 U.S.C. § 841(b)(1)(A),

17

Defendant faced, among other things, a mandatory minimum sentence of twenty years imprisonment and a potential maximum sentence of life imprisonment.  Defense counsel objected to the enhancement, arguing that the prior conviction was based on an information rather than indictment.  *See Doc. 91, 95; Sentencing Transcript 5/30/97 at 6-10.*

During the evidentiary hearing held at the first sentencing hearing, when Defendant was asked to affirm or deny the conviction, he said that he "remember[ed] they tried to charge me with something back in the '80s but not in the '90s which a couple of cops picked me up on the street and the judge, I think he threw the case out."  Counsel explained that Defendant was denying the conviction for the purposes of the hearing.  *Sentencing Transcript 5/30/97 at 17.*

The government called the probation officer who prepared the pre-sentence report.  He testified that he received the state court documents the Court had in its possession –  a felony complaint, pre-sentence report, and record of a plea hearing.  *Id. at 3, 21.*  Counsel objected to the introduction of the documents on the ground that they were not "certified."  *Id. at 22.*  The Court recessed at that point to allow the government to obtain certified copies and for the parties to brief the enhancement issue raised by defense counsel's objection.  *Id. at 22-23.*  At the continued sentencing hearing, however, the enhancement information was withdrawn by the United States.

*Use of Prior Narcotics Conviction.*  Defense counsel also initially objected to the use of the conviction in the criminal history section of the pre-sentence report, although it is not clear whether counsel based this objection on the information/indictment argument or whether it was based on some other ground.  *See Doc. 92; Doc. 108, PSR Exh. Addendum.*  Following the government's withdrawal of the enhancement information, however, defense counsel stated that

18

Defendant did not have any factual objections to the pre-sentence report.  Therefore, Chief Judge

Parker found no need to continue with the evidentiary hearing and adopted the factual statements

in the pre-sentence report.  *See Sentencing Transcript 6/23/97 at 2-3, 5.*

Defendant attaches a copy of his pre-sentence report to his § 2255 motion and argues that

the "court erred in considering the defendant's prior [conviction for possession of narcotics] as a

related offense pursuant to Section 2D1.1 because the prior offense" was not part of the instant

offense or a crime of violence.  *Doc. 108 at 14-15.*  However, Defendant misinterprets how the

1990 conviction was used.  It was not used in calculating his offense level score.  His offense level

score was derived from the amount of drugs in his possession.  The 1990 conviction was used in

calculating Defendant's criminal history score.  *Doc. 108, PSR Exh. at 5.*  Moreover, Defendant

was not sentenced as a career offender, so the prior conviction also was not used to increase his

offense level.  *See Sentencing Guideline, § 4B1.1.*   Accordingly, this argument is without merit.

*Age of Prior Convictions.*  Defendant argues that the 1990 prior narcotics conviction that

resulted in 90 days incarceration and a 1983 burglary charge that resulted in 42 months in prison

were incorrectly counted because they are more than ten years old.[9]   Prior convictions are

calculated from the date of the instant offense, not the date of sentencing.  *See Sentencing*

---

[9]  He offers nothing to contradict the record showing the prior conviction was in 1990,
other than the unsupported allegation in his § 2255 motion and his handwritten interlineations on
the copy of the pre-sentence report he tendered as an exhibit.  The record demonstrates that prior
to sentencing Judge Parker reviewed the documents from the prior conviction.  Judge Parker did
not indicate that the dates did not match what was provided in the enhanced information and
pre-sentence report.   Furthermore, at the sentencing hearing Defendant said he could only
remember a 1980 charge and, indeed, he must have been recalling his possession of narcotics
arrest in 1985 for which no disposition was available.  This arrest is noted in the pre-sentence
report but was not used in his criminal history calculation.  Defendant's conclusory assertions are
insufficient to support his factual claim or warrant an evidentiary hearing.

*Guideline § 4A1.2(e).*  Defendant committed the instant offense in April 1995.  Therefore, a 1990 conviction does not fall outside the ten-year window for an offense committed in 1995.

Even if the 1983 conviction should not have been considered, *see id. and Sentencing Guideline § 4A1.2(e)(1)),* the one point assigned to the burglary conviction had no effect on Defendant's resulting criminal history category of II.  This criminal history category is imposed if the number of points for prior convictions equals 2 or 3 points.  The pre-sentence report correctly assigns two points for the prior narcotics offense and one point for the burglary offense, for a total of three points.  Therefore, even without the burglary charge, Defendant still would have qualified for a criminal history category of II.  Accordingly, these arguments are without merit.

*Quantity of PCP.*  Defendant asserts that Chief Judge Parker erred in "relying solely on the pre-sentence report, as the probation officer who prepared the report . . . was not at the trial and did not hear the specific testimony regarding quantity."  *Doc. 108 at 13.*  He asserts that the testimony of DEA chemist about the amount of PCP was unclear because, at page 53 of the trial transcript, the chemist testified during cross-examination that he was not sure how much a milliliter is, saying that "it's a little less than one gram."   This assertion mischaracterizes the record.  Taken in its proper context, the "less than one gram" comment referred to the weight of the milliliter of liquid in which the PCP was suspended.  *Trial Transcript at 53.*  In any event, the chemist's testimony on his findings and calculations was clear – he found 115 milligrams of PCP per milliliter of liquid and explained how the calculation is made.  *Id. at 25, 28-29.*[10]

---

[10]   The chemist found 115 milligrams of PCP per milliliter of solution.  There are 3785 milliliters to a gallon (not 3870 milliliters as reflected in the transcript, which apparently was either a typographical error or the chemist mispoke; however the error does not change the calculations that the chemist related).  One hundred fifteen milligrams times 3785 milliliters equals 434,700 milligrams of PCP per gallon.  Defendant was carrying six half-gallons or 3 gallons of solution.

Moreover, Judge Parker did not simply rely on the pre-sentence report as evidenced by his comment during sentencing that "the testimony from the DEA of the dollar value [based on that amount], as I recall was in excess of one million or two million dollars. The Court heard testimony." *Sentencing Transcript 6/23/97 at 7.* Accordingly, I find that there was no error.[11]

### IX.  Conclusion

For the reasons set forth above, none of Defendant's claims have merit. Therefore, his assertion of ineffectiveness neither excuses the procedurally defaulted claims nor amounts to an independent basis for relief.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the United States' Motion To Dismiss *(Doc. 113)* be GRANTED, Defendant's § 2255 Motion be DENIED; and this action be dismissed with prejudice.

---

Thus, 434,700 times 3 gallons equals 1,304,100 milligrams or 1.3 kilograms of PCP as the chemist testified. *See Trial Transcript at 28.*

[11]Assuming the Supreme Court's decision in *Apprendi v. New Jersey,* 120 S. Ct. 2348 (2000) will be held to apply retroactively, it does not afford any relief for Defendant for several reasons. This case is distinguishable from *Apprendi* because the indictment charged Defendant with a specific amount of drugs and specifically under 21 U.S.C. § 841(b)(1)(A), thereby providing notice that he faced a possible life sentence. Evidence was presented at trial about quantity was undisputed at trial and sentencing and is not contradicted by the arguments Defendant makes here. The jury's verdict found him guilty "as charged in the indictment." Moreover, Defendant received a sentence of 210 months or 17.5 years incarceration, which is less than the statutory maximum of life under 21 U.S.C. § 841(b)(1)(A) and less than the 20 years provided in 21 U.S.C. § 841(b)(1)(C) (unspecified amounts of Schedule II drugs). *See e.g., United States v. Swatzie,* 228 F.3d 1278 (11th Cir. 2000); *Talbott v. Indiana,* 226 F.2d 866 (7th Cir. 2000); *United States v Smith,* 223 F.3d 554 (7th Cir. 2000), *petition for cert. filed 11/15/00; Sustache-Rivera v. United States,* 221 F.3d 8 (1st Cir. 2000); *petition for cert. filed 10/23/00.*

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE